IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| W.M. BARR & COMPANY, INC., | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. 3:22-cv-447 |
| DUMOND, INC., | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |

**PLAINTIFF W.M. BARR & COMPANY, INC.'S
REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

## I. Bottom Line Upfront.

Defendant *admits* in its response that the Infringing Product was orange from December 2020 until at least January 2022, and that its advertisements reflected a bright orange product color until at least September 2022, after Barr filed this lawsuit. Defendant's admission supports Barr's likelihood of success on the merits, even if Defendant now claims to have voluntarily ceased infringing activity. *See Lance Mfg. v. Voortman Cookies*, 617 F.Supp.2d 424, 431 (W.D.N.C. 2009). Moreover, regardless what color Defendant calls its product now, it is still likely to cause confusion with Barr's Marks. Defendant fails to address *any* of the likelihood of confusion factors relating to two of Barr's Marks, and misapplies the functionality doctrine. At best, Defendant's response bolsters Barr's likelihood of success on the merits; at worst, Defendant fails to overcome Barr's evidence in support of its Motion.[1]

## II. Defendant's Purported Voluntary Cessation of Infringement Does Not Moot Barr's Motion.

Defendant's leading argument is that it no longer infringes Barr's Orange Trade Dress because its product is no longer orange. Even assuming this is true, "[a] defendant cannot…automatically moot a case simply by ending its unlawful conduct once sued." *Already v. Nike*, 568 U.S. 85, 91 (2013)(internal citation omitted); *see also Lyons P'ship v. Morris Costume, Inc.*, 243 F.3d 789, 800 (4th Cir. 2001)(noting that "otherwise [defendant] would simply be free to return to their old ways after the threat of a lawsuit has passed"). A defendant bears a "heavy burden" to show "that it would be unable to resume such production in the future…." *Lance Mfg.*, 617 F.Supp.2d at 431. In *Nike*, the defendant was subject to a covenant not to sue that was "unconditional and irrevocable," distinguishable from where a defendant simply ceases infringing

---

[1] Barr will address Defendant's argument that it is not subject to personal jurisdiction in this District in its forthcoming Opposition to Defendant's Motion to Dismiss.

conduct because it was sued. *Compare Already*, 568 U.S. at 91-92 to *Lance Mfg.*, 617 F.Supp.2d at 431.

Here, as in *Lance*, Defendant has failed to establish that there is "no reasonable expectation that the wrong will be repeated." *Id*. Defendant claims to have changed its product color in January 2022[2]; but even assuming a color change, orange product may remain in distribution channels. The identical orange "artwork" is still being used online [DE 8-11], and even after Defendant represented to Barr in its September 21, 2022, letter "that its online artwork had been updated," its website still contained multiple uses of the bright orange artwork. Trimmer Decl.¶3, Ex.A. Defendant's bare assertion that it has now ceased infringing Barr's Orange Trade Dress is inadequate; Defendant has been infringing Barr's Marks *at a minimum* up until Barr's Motion.

### III.     Defendant's Infringing Product is Still Confusingly Similar to Barr's Marks.

Even with Defendant's purported changes to its product and artwork, Defendant continues to infringe Barr's Marks because it is still likely to cause consumer confusion.

As an initial matter, Defendant's argument that its product is yellow, and not orange, contradicts all evidence. Defendant's Safety Data Sheet ("SDS") for the product, taken from Defendant's website at the time of filing this reply, identifies the product color as "orange." *Id*. ¶4; Ex.B. Third party images submitted with customer reviews from both before and after January 2022 show the product color as orange. *Id*. ¶¶5-7, Ex.C-D.[3] The images shown in Mr. Greer's Declaration purporting to be "the current Dumond Product webpage" and "the current Amazon.com listing", while a lighter shade, are still orange. [DE 17-1, ¶9-10].

---

[2] In its letters, Defendant never revealed that the product color changed, but simply claims that the "real life" color of its product is "mustard yellow." *See* [DE 17-3 and 17-4].

[3] Defendant accuses Barr of using a "manipulated" customer image in its opening brief. Barr is attaching the full screenshot here, which states that the product was leaking—explaining that what Defendant purports to be orange packaging and an orange cap is actually the (orange) product spilled out over the white cap and in the bottom of the shipping box. Questionably, this image has since been removed from Defendant's Amazon page. Trimmer Decl. ¶5.

2

Regardless, Defendant fails to appreciate that no matter what color it calls it, the Infringing Product and Defendant's advertisements are confusingly similar to Barr's incontestable trade dress registration—particularly when coupled with Defendant's infringing label and packaging that is a colorable imitation of Barr's CITRISTRIP®. Defendant wrongly assumes that so long as its product is not *identical* in color to Barr's, then it is not infringing. The standard for trademark infringement is likelihood of confusion—not identity.

For color trademarks, courts have expressly rejected the shade confusion theory, stating that "deciding likelihood of confusion among color shades…is no more difficult or subtle than deciding likelihood of confusion where word marks are involved." *In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 1123 (Fed. Cir. 1985) (internal quotations omitted). Indeed, the Trademark Trial and Appeal Board has long found that a goldish-yellow is confusingly similar to orange when used on similar goods. *The Youngstown Sheet and Tube Co. v. Tallman Conduit Co.*, 149 U.S.P.Q. 656 (TTAB 1966) (citing Webster's Dictionary definitions of "orange" and "gold" finding that both include red and yellow; and noting that the color orange in advertisement may vary in its hue, saturation and brilliance). Ex.E.

Here, where at least two consumers have confused Defendant's Infringing Product with Barr's well-known Marks [DE 8-14,-15], Barr is extremely likely to succeed on the merits, no matter what color Defendant calls it.

3

## IV.  Barr's Trade Dresses are Not Functional.

Barr's Orange Trade Dress is registered on the Principal Register and accepted as incontestable, which is conclusive evidence of its validity, Barr's ownership, and Barr's exclusive right to use the Orange Trade Dress. *See* 15 U.S.C. § 1115(b). It is Defendant's burden to show that the Orange Trade Dress is functional, and Defendant has not met that burden.

"Generally speaking, trade dress is considered non-functional if it is not essential to the use or purpose of the product or if it does not affect the cost or quality of the product." *Lance Mfg., LLC*, 617 F.Supp.2d at 432 (citing *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 165, (1995)). Here, the orange color of Barr's CITRISTRIP® is not a functional aspect of paint/varnish remover—it is certainly not essential (or even necessary) to the use or purpose of the product, as demonstrated by all of the other paint and varnish removers on the market that are other colors, nor does it affect the cost or quality of the product. In fact, the orange color is added by Barr to CITRISTRIP® to give it the unique orange color—it does not occur naturally. [DE 8-1, ¶10].

Defendant asserts that Barr's Orange Trade Dress and CITRISTRIP® Packaging are functional because the trade dresses convey that Barr's product is citrus-scented, misconstruing the functionality doctrine. Barr's citrus scent is also not related to the functionality of the product—rather, like the orange color, the citrus scent is added to Barr's CITRISTRIP® products to strengthen consumer association of the color orange with CITRISTRIP®. [DE 8-4, p.33]. A trade dress does not become functional because it is consistent with another source-identifying, non-functional, feature of the brand. *See Qualitex*, 514 U.S. at 164-65. The Examining Attorney recognized this distinction, as compared to the orange-based cleaning products that she cited in her earlier refusal of Barr's application to register the mark (where the orange color and/or citrus scent were byproducts of the ingredients), when she approved the mark for registration. *Id*. The

4

same can be said for the cleaning products cited by Defendant (only one of which is a paint/varnish remover, and that one is not even orange—it is white (DE 17-9, p.11)):



[DE17-9—17-18][4].

---

[4] Defendant did not file Exs.N-O.

The USPTO accepted Barr's Orange Trade Dress as source identifying and non-functional; and for the same reasons, Barr's CITRISTRIP® Packaging[5] is similarly non-functional and also not descriptive.

### V. <u>Conclusion.</u>

For all of the foregoing reasons, Barr's Motion for Preliminary Injunction should be GRANTED.

This the 3rd day of November, 2022.

                                         Respectfully submitted,

                                         /s/ Christina Davidson Trimmer
                                         Christina Davidson Trimmer (N.C. Bar No. 44857)
                                         Christian H. Staples (N.C. Bar No. 40098)
                                         Lucas D. Garber (N.C. Bar No. 47756)
                                         Tom BenGera (N.C. Bar No. 57019)
                                         SHUMAKER, LOOP & KENDRICK, LLP
                                         101 South Tryon St., Suite 2200
                                         Charlotte, North Carolina 28280-0002
                                         (704) 375-0057 – Telephone
                                         (704) 332-1197 – Facsimile
                                         Email: ctrimmer@shumaker.com
                                                       cstaples@shumaker.com
                                                       lgarber@shumaker.com
                                                      tbengera@shumaker.com

                                         *Attorneys for Plaintiff*
                                         *W.M. Barr & Company, Inc.*

---

[5] Defendant also contends that "Barr's current trade dress has only been in use since 2019"; however all of the elements claimed as Barr's CITRISTRIP® Packaging were used on the prior CITRISTRIP® label as well, dating back to at least 2007. The exact label does not need to be the same, so long as the combination of elements comprising the trade dress are consistent. *See, e.g.*, *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992) (defining its trade dress as specific elements in the décor of its restaurants even though the restaurants were not all identical, but each contained the elements defined as the trade dress).

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. Civ. P. 11 and the Initial Scheduling Order, the undersigned hereby certifies that Plaintiff's Reply to Motion for Preliminary Injunction complies with the word count. The undersigned has relied upon the word count feature of a word processing system in preparing this certificate.

Dated: November 3, 2022

/s/ Christina Davidson Trimmer
Christina Davidson Trimmer
N.C. Bar No. 44857
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon St., Suite 2200
Charlotte, North Carolina 28280-0002
(704) 375-0057 – Telephone
(704) 332-1197 – Facsimile
Email: ctrimmer@shumaker.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2022, the foregoing document was electronically filed via the Court's CM/ECF system and served on all counsel of record.

/s/ Christina Davidson Trimmer
Christina Davidson Trimmer
N.C. Bar No. 44857
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon St., Suite 2200
Charlotte, North Carolina 28280-0002
(704) 375-0057 – Telephone
(704) 332-1197 – Facsimile
Email: ctrimmer@shumaker.com
