**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

_____

W.M. BARR & COMPANY, INC.,

        Plaintiff,

        vs.

DUMOND, INC.,

        Defendant.
_____

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 3:22-cv-447

**JURY TRIAL DEMANDED**

## PLAINTIFF W.M. BARR & COMPANY, INC.'S
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE
## ALTERNATIVE, TO TRANSFER TO THE EASTERN DISTRICT OF PENNSYLVANIA

# TABLE OF CONTENTS

BOTTOM LINE UPFRONT…………………………………………………………........1

ARGUMENT………………………………………………………………....................1

    I.     Defendant's Motion to Dismiss Should be Denied…………………………………1

          A.     Legal Standard……………………………………………………………..1

          B.     Defendant is Subject to Specific Jurisdiction Because it has Admitted to Selling nearly 1,400 Infringing Products into North Carolina………………2

                  i.     Defendant purposefully directed its activities at residents of North Carolina……………………………………………………...3

                  ii.    Each cause of action arises out of or directly relates to Defendant's activities in North Carolina………….……………..6

                  iii.   Defendant fails to show that the assertion of personal jurisdiction would not be 'reasonable and fair'……………………..7

          C.     Defendant's Systematic and Continuous Contacts with North Carolina Retailers Establishes a Prima Facie Showing of General Jurisdiction………8

    II.    Defendant's Motion to Transfer Should be Denied………………………………11

          (1)    Plaintiff's choice of forum…………………………………………...12

          (2)    Residence of the Parties……………………………………………...13

          (3)    Access of proof………………………………………………………13

           (4)    Compulsory process for witnesses…………………………………...13

          (5)    Possibility of a view…………………………………………….....14

          (6)    Enforceability of a judgment………………………………………14

          (7)    Fair trial……………………………………………………………14

          (8)    Ease of trial…………………………………………………………14

          (9)    Court congestion……………………………………………………14

          (10)   Localized controversies……………………………………………...15

i

      (11)    Conflicts of law……………………………………………………………15

CONCLUSION……………………………………………………………………………...15

**TABLE OF AUTHORITIES**

**Cases:**                                                                                          **Page(s):**

*AFL Telecommunications v. Fiberoptic Hardware*,
    2011 WL 4374262 (D. Ariz. Sept. 20, 2011)……………………………………………10

*Accretive Com., Inc. v. Kenco Grp., Inc.*,
    2008 Wl 413856, at *4 (W.D.N.C. Feb. 13, 2008)………………………………………...11, 12

*Akeva v. Mizuno Corp.*,
    199 F. Supp. 2d 336 (M.D.N.C. 2002)……………………………………………………2, 3

*Amp Inc. v. Methode Electronics, Inc.*,
    823 F. Supp. 259 (M.D. Pa. 1993)………………………………………………………11

*Asahi Metal Indus. Co. v. Superior Court of California*,
    480 U.S. 102 (1987)……………………………………………………………………7

*Atari v. McNeal*,
    159 F. Supp. 2d 224 (W.D.N.C. 2000)…………………………………………………...11

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)……………………………………………………………………2, 6

*Celgard v. SK Innovation Co.*,
    2013 WL 7088637 (W.D.N.C. Nov. 26, 2013)…………………………………………2

*Combs v. Bakker*,
    886 F.2d 673 (4th Cir. 1989)……………………………………………………………2

*Crystal Semiconductor Corp. v. OPTI Inc.*,
    1997 WL 798357 (W.D. Tex. July 14, 1997)…………………………………………10

*Dayton Superior Corp. v. Gen Techs., Inc.*,
    2009 WL 4250034 (S.D. Ohio Nov. 20, 2009)…………………………………………9

*Helicopteros Nacionales de Colombia v. Hall*,
    466 U.S. 408 (1984)……………………………………………………………………6, 8

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945)……………………………………………………………………7

*LSI Indus. Inc. v. Hubbell Lighting, Inc.*,
    232 F.3d 1369 (Fed. Cir. 2000)…………………………………………………………9

*Link v. Pennsylvania State Police*,
  2015 WL 3822832 (W.D.N.C. June 19, 2015)…………………………………………………..14

*Netalog, Inc. v. Tekkeon, Inc.*,
  2007 WL 534551 (M.D.N.C. Feb. 15, 2007)………………………………………………….7, 8

*O'Donnell v. Animal Matter, Inc.*,
  2007 WL 2781218 (W.D.N.C. Sept. 21, 2007)………………………………...................5, 7

*Orrell v. Motorcarparts of Am., Inc.*,
  2007 Wl 895503 (W.D.N.C. Mar. 22, 2007)……………………………………........12, 13, 14

*Ospina v. Baraya*,
  2021 WL 6072606 (W.D.N.C. Dec. 23, 2021)…………………………………………………2

*Pouncey v. Guilford Cnty.*,
  No. 1:18-cv-1022, 2020 WL 1274264 (M.D.N.C. Mar. 17, 2020)……………………………8

*SC Advisors 7 v. Rudnick*,
  2020 WL 4227469 (W.D.N.C. July 23, 2020)……………………………………...........10

*Steel v. Am. Cir. Breaker Corp.*,
  2007 WL 1032437 (W.D.N.C. Mar. 28, 2007)……………………………………………..14

*Takonix Inc. v. BrakeAway Prod., Inc.*,
  2011 WL 495776 (D. Minn. Feb. 4, 2011)…………………………………………...........4, 10

*Taltwell v. Zonet USA Corp.*,
  2007 WL 4562874 (E.D. Va. Dec. 20, 2007)………………………………………......7, 9, 10, 11

*ThroughPuter, Inc. v. Microsoft Corp.*,
  2022 WL 874319 (E.D. Va. Mar. 23, 2022)…………………………………………………..13

*Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*,
  682 F.3d 292 (4th Cir. 2012)………………………………………………………………6

*Verosol B.V. v. Hunter Douglas, Inc.*,
  806 F. Supp. 582 (E.D. Va. 1992)…………………………………………………………10

*Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*,
  304 F. Supp. 2d 769 (M.D.N.C. 2004)………………………………………………………5

**Statutes:**

N.C. Gen. Stat. § 105-164.8…...………………………………………………………………6

iv

15 U.S.C. § 1114(1)(a)……………………………………………………………6

15 U.S.C. § 1125(a)……………………………………………………………….6

28 U.S.C. 1391(c)(2)…………………………………………………………...13

28 U.S.C. 1391(d)……………………………………………………………….13

v

**BOTTOM LINE UPFRONT**

Defendant[1] is subject to personal jurisdiction in North Carolina. Defendant *admits* to nearly 1,400 sales of the Infringing Product in the course of 21 months to consumers in North Carolina— which is nearly 1,400 potential instances of consumer confusion in North Carolina. The Infringing Products infringe Barr's trademark rights, and thus are at the core of Barr's claims. Accordingly, there are nearly 1,400 reasons why Defendant is subject to specific personal jurisdiction in this forum, and it only takes one.

Additionally, the 'Find Our Stores' functionality on Defendant's own website demonstrates its 'systematic and continuous contacts' with this forum; i.e., approximately 200 retail locations across the state carrying Defendant's portfolio of products, including 25 locations in the Charlotte area alone. Several of Defendant's retail partners only operate in North Carolina, evidencing Defendant's intent to direct sales into North Carolina. These systematic and continuous contacts subject Defendant to general jurisdiction in North Carolina.

Finally, no good cause exists for transferring this action to Pennsylvania. Many of Barr's key employee witnesses live and work in North Carolina, and in this District, and the infringing conduct is occurring in this State and District. Defendant's motion to transfer should be denied.

**ARGUMENT**

I. **Defendant's Motion to Dismiss Should be Denied**

   A. Legal Standard

"The determination of personal jurisdiction is based upon a two-part inquiry. The first, or statutory, part requires the assertion of personal jurisdiction under North Carolina's long-arm

---

[1] Barr uses the defined terms set forth in its Memorandum in Support of its Motion for Preliminary Injunction [DE 8].

1

statute. The second, or constitutional, part requires the exercise of personal jurisdiction comply with due process." *Ospina v. Baraya*, 2021 WL 6072606, at *1 (W.D.N.C. Dec. 23, 2021) (citation omitted). "Courts have historically construed North Carolina's long-arm statute to be coextensive with the Due Process Clause. This construction collapses the statutory and constitutional requirements into a single inquiry of whether the non-resident defendant has such 'minimum contacts' with the forum state that exercising jurisdiction over it does not offend 'traditional notions of fair play and substantial justice.'" *Id*. (citations omitted).

"A court must resolve factual disputes in favor of the party asserting jurisdiction for the limited purpose of the prima facie showing." *Celgard v. SK Innovation Co.*, 2013 WL 7088637, at *1 (W.D.N.C. Nov. 26, 2013)(citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). "Such resolution must include construing all relevant pleadings in a light most favorable to the plaintiff, assume the credibility of any affiant, and drawing the most favorable inferences for the existence of jurisdiction." *Id*.

B. Defendant is Subject to Specific Jurisdiction Because it has Admitted to Selling nearly 1,400 Infringing Products into North Carolina.

Specific jurisdiction "arises out of" or "relates to" the cause of action even if those contacts are "isolated and sporadic." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985). "Specific jurisdiction can arise out of even a single contact with the forum state if the claim 'arises out of' that contact." *Akeva v. Mizuno Corp.*, 199 F.Supp.2d 336, 339 (M.D.N.C. 2002).

The court considers several factors in deciding whether specific jurisdiction exists, including: "(1) the extent to which the defendant purposely availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable". *Ospina v. Baraya*, 2021 WL 6072606, at *2 (W.D.N.C. Dec. 23, 2021) (internal

2

citations omitted). Here, the undisputed facts alone satisfy the first prong, and Defendant does not contest the remaining two factors such that they are conceded. All three factors weigh in favor of finding Defendant subject to specific jurisdiction.

      i.    <u>Defendant purposefully directed its activities at residents of North Carolina.</u>

Defendant admits to causing nearly 1,400 separate sales of the Infringing Product into North Carolina, but disavows specific jurisdiction on the premise that those sales comprise a minority of its nationwide sales and were not made directly from its website. [DE 15, pp.6-9]. Defendant ignores the key principle of specific jurisdiction—that it "can arise out of even a single contact with the forum state if the claim 'arises out of' that contact.'" *Akeva*, 199 F.Supp.2d at 339. Here, there are *at least* 1,350 such 'single contacts' with North Carolina, each of which is sufficient to establish specific jurisdiction.[2]

Defendant also downplays the relevant 'interactivity' of its website, which displays the Infringing Product images. [DE 15, pp.8-9.] For example, Defendant fails to mention its 'Find Our Stores' feature, which—in exchange for a user's 'Current Location' and 'Search Radius'— provides users (including North Carolina users) with an interactive map of nearby retailers:

---

[2] In addition to Amazon, Defendant sells the Infringing Product through other third-party websites, including ContractorsWholesaleSupplies.com, which is located approximately 15 miles from the Courthouse. Trimmer Decl.,¶3; <u>Exhibit A</u>; *see also* [DE 8-8]. Defendant conspicuously omits these sales figures.

3



Exhibit B, *available at* https://dumondglobal.com/pages/sca-store-locator; *see also* [DE 8-9]. The search parameters above (*i.e.*, 28280 zip code with a 20 mile radius) return 25 retail locations in the Charlotte area. Trimmer Decl.¶4. For each location, Defendant's website then plots the retailer's location on a map, provides their physical address and phone number, and includes a hyperlink (labelled 'Directions') which launches Google Maps to provide driving directions. *Id*.

Defendant's self-identification as an out-of-state defendant that has "merely place[d] information on the internet" [DE 15, p.8] is contradicted by the aforementioned interactivity of its website, which advertises the Infringing Product and purposefully directs users to brick-and-mortar locations in North Carolina to purchase Defendant's products. *Takonix Inc. v. BrakeAway Prod., Inc.*, 2011 WL 495776, at *1 (D. Minn. Feb. 4, 2011) (denying motion to dismiss where plaintiff alleged that defendant "directs viewers to a network of brick-and-mortar authorized dealers, fifteen of whom are located in [the forum]"). The structure of Defendant's supply chain—including its distribution network and fulfillment via Amazon.com[3]—does not change the fact that

---

[3] Defendant's product listing says that it is "Sold By: Fulfillment 123." Fulfillment 123 is Defendant. Exhibit C. In addition to listing and advertising the Infringing Product for sale on Amazon, Defendant created and operates a virtual Amazon "store," advertising the Infringing Product and through which it can be purchased. Exhibit D.

Defendant purposefully directs its activities relating to the Infringing Product at residents of North Carolina.

This Court previously considered and explicitly rejected Defendant's arguments. In *O'Donnell v. Animals Matter, Inc.*, this Court analyzed a nearly identical website and distribution network in finding specific jurisdiction:

> Defendant contends that it has not "purposefully directed" business to North Carolina because it has made no direct sales here. Instead, Defendant has merely sold its products to wholesalers, who have in turn sold them to North Carolina retailers. Thus, Defendant argues that any allegedly infringing products sold in North Carolina have been sold as a result of the activity of others, not Defendant's own purposeful direction. ***This argument must fail given Plaintiff's allegations and the current procedural posture of the case.*** Plaintiff has attached to his complaint a document showing a portion of Defendant's Web site. The Web site lists retailers that provide Defendant's products in 45 states as well as certain international locations. When a visitor to the site clicks on the hyperlink labeled "North Carolina," he is directed to a page with two North Carolina retailers that sell Defendant's products. ***The retailers' addresses, phone numbers, and mapped locations are available on this page. Defendant argues that although this information is available, it does not amount to purposeful direction because no direct sales are made through the Web site. This Court disagrees. Defendant is clearly targeting North Carolina consumers by providing a hyperlink to two locations in North Carolina where Defendant's products may be purchased***. A consumer who visits Defendant's Web site is not concerned with the supply chain of manufacturers, wholesalers, and retailers. The consumer simply desires Defendant's product and is directed to a location in North Carolina where he or she may purchase that product. This direction is purposeful on Defendant's part, and Defendant no doubt benefits from this purposeful direction. The fact that such benefits may be de minimis, as Defendant contends, is irrelevant to the specific personal jurisdiction inquiry. Therefore, the "purposefully directed" factor has been satisfied.

2007 WL 2781218, at *1 (W.D.N.C. Sept. 21, 2007)(emphasis added). The 'interactivity' of Defendant's website, discussed above, is identical to the website in *O'Donnell*. Moreover, the argument that there can be no 'purposeful direction' without 'direct sales' is squarely rejected. *Id*.; s*ee also Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc*., 304 F.Supp.2d

769, 771 (M.D.N.C. 2004).[4] There is no doubt that Defendant has purposefully directed its infringing activities at residents of North Carolina sufficient to warrant specific jurisdiction.

ii.   <u>Each cause of action arises out of or directly relates to Defendant's activities in North Carolina.</u>

"The second prong of the constitutional test for specific jurisdiction requires that the defendant's contacts with the forum state form the basis of the suit." *See Burger King*, 471 U.S. at 472; *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984). "Where activity in the forum state is the genesis of the dispute, this prong is easily satisfied." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 303 (4th Cir. 2012)(internal quotation marks omitted). Defendant does not dispute this factor. Moreover, it is easily satisfied.

Each of Barr's causes of action arises out of and is directly related to Defendant's "sale, offering for sale, distribution [and] advertising"[5] of the Infringing Product, including in North

---

[4] Defendant also relies heavily on the fact that it is not "registered as a foreign entity to transact business in North Carolina" [DE 15, pp.1, 3, 7-8], without considering whether it ***should be registered*** as a "remote seller" pursuant to N.C. Gen. Stat. § 105-164.8 (attached as <u>Exhibit E</u>), which requires "[a]ll remote sellers having gross sales in excess of one hundred thousand dollars ($100,000) sourced to North Carolina or two hundred (200) or more separate transactions sourced to North Carolina in the previous or current calendar year ***must register*** to collect and remit sales and use tax to North Carolina effective November 1, 2018." *See* https://www.ncdor.gov/taxes-forms/sales-and-use-tax/who-should-register-sales-and-use-tax (attached as <u>Exhibit F</u>); N.C. Gen. Stat. § 105-164.8(b)(9) (includes remote sales made as a "marketplace seller," *e.g.*, on Amazon, eBay, or Etsy). Defendant admits to having 545 and 808 sales of the Infringing Product sourced to North Carolina in 2021 and 2022, respectively, from its Amazon store, far in excess of the 200 "separate transactions" threshold. [DE 15, pg. 9]. And that does not even include its sales of non-infringing products, or sales on other "marketplaces," which would be added to that count. Notably, whether or not Amazon (*i.e.*, the "marketplace facilitator") collects and remits sales tax on Defendant's behalf at the point of sale, Defendant must still register and file sales tax returns, even if zero tax is owed. Defendant should not be able to avoid jurisdiction for its failure to register to do business here.

[5] *See* 15 U.S.C. § 1114(1)(a); 15 U.S.C. § 1125(a)); *see also* [DE 1, ¶¶ 39-63].

6

Carolina.[6] *O'Donnell*, 2007 WL 2781218, at \*2 ("the second factor is similarly satisfied, as Plaintiff has alleged that Defendant is selling, offering to sell, and/or inducing offers to sell products in North Carolina that infringe Plaintiff's [] patent. Such activity, which at this stage of the proceedings this Court must assume to be true, certainly arises out of or relates to Defendant's activities in North Carolina.").

        iii.    Defendant fails to show that the assertion of personal jurisdiction would not be 'reasonable and fair.'

Where a plaintiff can establish the first two prongs of the test for specific jurisdiction, the burden "shifts to the defendant under the third prong to show that the assertion of personal jurisdiction would not be 'reasonable and fair.'" *Netalog, Inc. v. Tekkeon, Inc.*, 2007 WL 534551, at \*4 (M.D.N.C. Feb. 15, 2007) (citation omitted). "In evaluating this issue, the Court must 'consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief' as well as the furthering of 'fundamental substantive social policies.'" *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987)). As a general matter, the Supreme Court noted:

> [T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.

*International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945).

---

[6] The fact that Defendant sells nationwide does not change the outcome. *Taltwell, LLC v. Zonet USA Corp.*, 2007 WL 4562874, at \*9 (E.D. Va. Dec. 20, 2007) ("To redress [plaintiff's] alleged nationwide harm, [plaintiff] need only establish personal jurisdiction in this forum by demonstrating that some of [defendant's] activities in [the forum state] gave rise to or relate to the claim.").

7

Defendant fails to meet its burden since its brief says only, and in conclusory fashion, that it would be "inappropriate and unfair to exercise personal jurisdiction." [DE 15, p.9.] Any discussion in Defendant's reply brief would be improper new matter. *Pouncey v. Guilford Cnty.*, 2020 WL 1274264, at *5 (M.D.N.C. Mar. 17, 2020). Here, as in *Netalog*, Defendant "took advantage of potential North Carolina business opportunities in various ways" such that the exercise of personal jurisdiction is reasonable and fair. 2007 WL 534551, at *4.

Defendant's motion to dismiss for lack of personal jurisdiction should be denied.

C. <u>Defendant's Systematic and Continuous Contacts with North Carolina Retailers Establishes Prima Facie Showing of General Jurisdiction</u>

Defendant fails to truly address general jurisdiction. General jurisdiction arises when a defendant maintains "continuous and systematic" contacts with the forum state even when the cause of action has no relation to those contacts. *Helicopteros*, 466 U.S. at 414–16.

As stated in the Complaint, the Court has general jurisdiction over Defendant because Defendant "conduct[s] business in this state and in this district" [DE 1, ¶9] by "selling its own line of surface preparation and cleaning products" [*id.*, ¶25] including ***but not limited to*** the Infringing Product. Defendant tenders that it "does not engage in any business of any kind in North Carolina" [DE 15, p.6] and that it "has no presence in the state" [*id.*, p.8]. But these claims are belied by Defendant's own website, which neatly demonstrates Defendant's 'systematic and continuous' contacts with North Carolina. According to the 'Find Our Stores' tool on its own website, Defendant's products can be found on store shelves in no fewer than ***twenty-five (25)*** store locations in the Charlotte area alone, where each node on the map below represents a separate 'contact' with North Carolina residents [DE 8-9]:



Indeed, the "Find Our Stores" locator shows nearly 200 stores across the entire state of North Carolina. Trimmer Decl.¶9, <u>Exhibit G</u>. At least a dozen of Defendant's retail partners have no presence *outside* of North Carolina, evidencing Defendant's specific intent to target North Carolina end-users. <u>Exhibits H-Q</u>.

By selling through so many North Carolina retailers, Defendant has established systematic and continuous contacts with North Carolina. *Taltwell*, 2007 WL 4562874, at *7 ("a broad distributorship network in a forum state that generates a substantial amount of revenue for the defendant may warrant general jurisdiction…Creating an ongoing business relationship with a resident of the forum state further indicates that the party has purposefully directed activities at forum.") (citing *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000)); *see Dayton Superior Corp. v. Gen Techs., Inc.*, 2009 WL 4250034, at 6* (S.D. Ohio Nov.20, 2009) (finding prima facie case of general jurisdiction where defendant acknowledged eight distributors in Ohio as part of nationwide distribution network, although it had provided no specific information about the transactions or sales connected with these accounts).

As a consequence of completely ignoring its relationship with North Carolina retailers, Defendant fails to refute the presumption that its network of retail customers in North Carolina, particularly those with stores only in North Carolina, order product from Defendant with shipment

9

to North Carolina. *Crystal Semiconductor Corp. v. OPTI, Inc.*, 1997 WL 798357, at *6 (W.D. Tex. July 14, 1997) ("Direct sales to the forum state presents a different situation than the simple "stream of commerce" scenario presented in *World–Wide Volkswagen*."); *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 591 (E.D.Va. 1992) (distinguishing prior case finding no general jurisdiction where the Virginia retailers "ordered the products from the [Virginia] defendant, [but] with shipment f.o.b. New York"). Accordingly, Barr has established the requisite *prima facie* showing that Defendant ships its products directly to its network in North Carolina.

Defendant's averment of no general jurisdiction is based on several flawed premises, each of which is contrary to settled law. ***First***, *all* of Defendant's products sold into North Carolina are relevant to considering general jurisdiction, not just its sale of the Infringing Product. [DE 15, p.9]; *but see AFL Telecommunications v. Fiberoptic Hardware*, 2011 WL 4374262, at *2 (D. Ariz. Sept. 20, 2011) ("the Court may exercise general jurisdiction over [defendant] consistent with principles of constitutional due process" where defendant "offer[ed] for sale many [] products other than [allegedly infringing products]").

Moreover, even under Defendant's improperly contrived scope, its nearly 1,400 sales of Infringing Product in the last 21 months is sufficient to establish general jurisdiction. *See, e.g.*, *Taltwell*, 2007 WL 4562874, at *7 (characterizing *twenty* sales of alleged infringing products, representing less than $500 dollars in sales, by three retailers over seven years as "somewhat continuous and systematic"); *see also SC Advisors 7 v. Rudnick*, 2020 WL 4227469, at *4 (W.D.N.C. July 23, 2020) (finding general personal jurisdiction met where plaintiff alleged, *inter alia*, that defendant had sent "over 100 separate interest payments" to plaintiff in North Carolina).

***Second***, Defendant disregards the significance of its own interactive website, which connects North Carolina end-users to Defendant's retail partners in North Carolina. *Takonix*, 2011

10

WL 495776, at *1; *Taltwell*, 2007 WL 4562874, at *8 ("[defendant] has purposefully directed commercial activities at the forum state by maintaining a business relationship with resellers, distributors, and/or retailers"). Here, Defendant's own website directs consumers to "Our Stores"—North Carolina resellers, distributors, and retailers, including several who operate exclusively in this state. *See* <u>Exs. B, G-Q</u>.

***Third***, Defendant's argument that "over 97% of [its] total [] sales occurred outside North Carolina" is unavailing. [DE 15, p.9.]; *Amp Inc. v. Methode Electronics, Inc.*, 823 F.Supp. 259, 268 (M.D. Pa. 1993) ("[Defendant's] argument that its total [in-state] sales represent an insubstantial percentage of overall revenue is also unavailing…Although we concede that [defendant's in-state] sales are not a significant percentage of overall sales, it had sales here averaging at a substantial level.").

Accordingly, since Barr has established Defendant's 'systematic and continuous' contacts with North Carolina, a *prima facie* case of general personal jurisdiction is met.

## II.     Defendant's Motion to Transfer Should be Denied

Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." *Id*. In moving to transfer venue, "Defendant carries a heavy burden of not only showing that the case could have originally been brought in the transferee forum, but also in showing that a balancing test analyzing the convenience of the parties and witnesses, as well as the interest of justice, clearly favors transferring the case." *Accretive Com., Inc. v. Kenco Grp., Inc.*, 2008 WL 413856, at *4 (W.D.N.C. Feb. 13, 2008). "Unless the balance is tipped ***strongly*** in favor of the moving party, plaintiff's choice of forum should not be disturbed." *Atari v. McNeal*, 159 F.Supp.2d 224, 227 (W.D.N.C. 2000)(emphasis added). "Ultimately, the question of transfer

under section 1404(a) is committed to the sound discretion of this Court." *Accretive Com.*, 2008 WL 413856, at *4.

For purposes of this motion, Barr does not dispute that the case could have been brought in the Eastern District of Pennsylvania. However, Defendant has failed to carry its heavy burden of showing that the balance of relevant factors, as well as the interest of justice, favor transfer. *See, e.g.*, *id*. Defendant's argument in favor of transfer relies almost entirely on its own convenience. "Where transferring venue would do little more than shift the balance of inconvenience from one party to another, the plaintiff's initial choice of forum is determinative." *Orrell v. Motorcarparts of Am., Inc.*, 2007 WL 895503, at *3 (W.D.N.C. Mar. 22, 2007) (collecting cases).

*(1) Plaintiff's choice of forum.* "This Court long has recognized that in considering a motion to transfer pursuant to section 1404(a), a court ordinarily should accord the plaintiff's choice of forum great weight." *Id*. at *5. (collecting cases). Moreover, "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice...should not be lightly disturbed." *Id*. (citations omitted).

Barr chose this forum because, even though it is a Tennessee company, many of the relevant witnesses to this action actually live and work in North Carolina. Barr's sister company, Microban International, Ltd. ("Microban") located in this State and District, in Huntersville, NC, such that several Barr employees also reside and work here, and its Board meets annually here. Byrd Decl.¶¶7-11. Barr and Microban are both wholly owned subsidiaries of Barr Brands International, Inc. ("BBI"), which is a Tennessee corporation registered to do business in the state of North Carolina. *Id*. ¶5. Specific to this action, the following Barr employee witnesses live and work in North Carolina: the Vice President, General Counsel & Secretary of BBI and officer of Barr, who oversees all legal and regulatory affairs; the Vice President of Sales; the Director of

Sales, Homecenter & Hardware; the Senior E-Commerce Manager (relevant to Amazon); the National Account Manager for Amazon; the National Account Manager for Ace Hardware; and a Senior Chemist. *Id*. ¶¶7-10. Moreover, Barr ordered and received the Infringing Product in this State and District from Defendant, confirming that the infringing conduct was occurring here. *Id*. ¶15. Barr's choice of forum should stand.

*(2) Residence of the parties.* Under 28 U.S.C. § 1391(c)(2) and (d), because Defendant is an entity subject to this Court's personal jurisdiction (as explained above), it is deemed to reside in this judicial district. Barr, as plaintiff, is deemed to reside in the Eastern District of Tennessee, but maintains significant corporate contacts in North Carolina. This factor weighs against transfer to Pennsylvania.

*(3) Access of proof.* As discuss above, many of Barr's relevant witnesses reside in North Carolina, such that the access of proof weighs against transfer. Moreover, the bulk (if not the entirety) of discovery in this case is likely to be electronic, such that, at best, this factor is neutral. *See ThroughPuter, Inc. v. Microsoft Corp.*, 2022 WL 874319, at *10 (E.D. Va. Mar. 23, 2022) (agreeing that "changes in technology have lessened the importance of the court's proximity to physical documentation.")(internal citations omitted). Defendant has not identified any physical evidence that would require transport or in-person inspection, nor are such activities likely in a trademark infringement and unfair competition case.

*(4) Compulsory process for witnesses.* Defendant has not identified any third-party witnesses that would not be subject to compulsory process of this Court. All witnesses identified by Defendant are employees of Defendant and subject to being available to testify here. Defendant's California employees would have to travel regardless. Many of Barr's witnesses are located in North Carolina, which weighs against transfer. *See Orrell*, 2007 WL 895503, at *3

13

(should not simply shift inconvenience from defendant to plaintiff). Barr has no employees, and is aware of no third-party witnesses, in the Eastern District Pennsylvania. It would be costly for Barr's employees to travel to Pennsylvania and disruptive to Barr's business. Byrd Decl.¶12.

    *(5) Possibility of a view.* This factor is inapplicable.

    *(6) Enforceability of a judgment.* Defendant argues that it only has assets in Pennsylvania; however, "this Court could require a Pennsylvania court to enforce the judgment." *Link v. Pennsylvania State Police*, 2015 WL 3822832, at *3 (W.D.N.C. June 19, 2015). Moreover, a transfer of venue is far more disruptive and costly to judicial economy than proceeding to enforce any judgment of this Court by domestication and issuance of writ of execution.

    *(7) Fair trial.* Again, Defendant incorrectly assumes that Barr's witnesses are not in North Carolina, when in fact many of them are. Simply shifting the inconvenience from Plaintiff to Defendant is insufficient for this factor to weigh in favor of transfer. *See Orrell*, 2007 WL 895503, at *3.

    *(8) Ease of trial.* The same analysis under Factor 7 applies here.

    *(9) Court congestion.* Here, this Court will have already heard Plaintiff's Motion for Preliminary Injunction [DE 24], such that transferring the matter to Pennsylvania will most likely delay adjudication of Plaintiff's claims and cause judicial inefficiency. *See Link*, 2015 WL 3822832, at *2. Moreover, even using the data cited by Defendant, the average case load per judge in this District is actually 25 percent less than in the Eastern District of Pennsylvania[7]. *Steel v. Am. Cir. Breaker Corp.*, 2007 WL 1032437, *4 (W.D.N.C. Mar. 28, 2007)("Although the time period

---

[7] Derived from the most recent "U.S. District Courts—Federal Management Statistics—Profiles" report, available at https://www.uscourts.gov/report-name/federal-court-management-statistics. Relevant pages attached as <u>Exhibit R</u> (WDNC average case load per judge is 322—1612 pending cases among 5 judges; EDPA average case load per judge is 428—9429 pending cases among 22 judges).

for resolution of cases may differ in the two districts, the case load of judges in the Southern District of New York is larger than the case load per judge in the Western District of North Carolina.").

*(10) Localized controversies.* Defendant has admitted to nearly 1,400 sales of infringing product in just 21 months in North Carolina alone, and the case involves North Carolina causes of action. This Court has a strong interest in adjudicating claims involving the confusion of consumers and unfair business practices in North Carolina.

*(11) Conflicts of law.* Barr alleges claims under North Carolina state law, including a claim under the North Carolina Unfair and Deceptive Trade Practices Act. It makes much more sense for a North Carolina court to adjudicate claims under North Carolina law.

The balance of these factors weighs heavily against transfer of this case to Pennsylvania, far from the heavy burden Defendant is required to show to disturb Plaintiff's choice of forum.

## CONCLUSION

For the reasons stated above, Barr respectfully requests that the Court DENY Defendant's Motion to Dismiss or, in the Alternative, to Transfer to the Eastern District of Pennsylvania.

This the 10th day of November, 2022.

Respectfully submitted,

 /s/ Christina Davidson Trimmer
Christina Davidson Trimmer (N.C. Bar No. 44857)
Christian H. Staples (N.C. Bar No. 40098)
Lucas D. Garber (N.C. Bar No. 47756)
Tom BenGera (N.C. Bar No. 57019)
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon St., Suite 2200
Charlotte, North Carolina 28280-0002
(704) 375-0057 – Telephone
(704) 332-1197 – Facsimile
Email: ctrimmer@shumaker.com
          cstaples@shumaker.com
          lgarber@shumaker.com

15

tbengera@shumaker.com

*Attorneys for Plaintiff*
*W.M. Barr & Company, Inc.*

16

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. Civ. P. 11 and the Initial Scheduling Order, the undersigned hereby certifies that Plaintiff's Opposition to Defendant's Motion to Dismiss or, in the Alternative, to Transfer to the Eastern District of Pennsylvania complies with the word count. The undersigned has relied upon the word count feature of a word processing system in preparing this certificate.

Dated: November 10, 2022

/s/ Christina Davidson Trimmer
Christina Davidson Trimmer
N.C. Bar No. 44857
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon St., Suite 2200
Charlotte, North Carolina 28280-0002
(704) 375-0057 – Telephone
(704) 332-1197 – Facsimile
Email: ctrimmer@shumaker.com

17

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2022, the foregoing document was electronically filed via the Court's CM/ECF system and served on all counsel of record.

/s/ *Christina Davidson Trimmer*
Christina Davidson Trimmer
N.C. Bar No. 44857
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon St., Suite 2200
Charlotte, North Carolina 28280-0002
(704) 375-0057 – Telephone
(704) 332-1197 – Facsimile
Email: ctrimmer@shumaker.com

18